## THE REFORMED DUTCH CHURCH OF NORTH BRANCH v. JOHN TEN EYCK.

If a deed be altered by the attesting witness in the presence of the grantor, and the witness attests a note of the alterations, and afterwards hands the deed so altered and attested to the grantee, this is sufficient evidence of the assent of the grantor to the alterations, and of the delivery by him of the deed as altered: and these facts cannot be overcome by the verbal or written statements of the subscribing witness since deceased. *It would seem* that such statements can be admitted as evidence to impugn the presumption arising from the signature of the subscribing witness, but alone they are insufficient to overcome it.

This was an action of trespass *quare clausum fregit*, brought against the defendant for forcibly breaking the gate, and entering into the burying ground in possession of the plaintiffs. The defendant justified by pleading title in James Ten Eyck, by whose command he entered. The only question was title to the *locus in quo.*

The defendant showed title in James Ten Eyck prior to September 12, 1829, which title was not disputed by the plaintiffs, who claimed title in two modes—first, by a deed from James Ten Eyck to them, dated September 12, 1829 ; and secondly, by adverse possession from that date to September 20, 1852, the date of the alleged tres pass.

The plaintiffs showed possession by them from Septem ber, 1829, when the lot was bought of James Ten Eyck, and part of the price paid to him by them, that they had since then kept the same fenced and enclosed, and exercised acts of ownership over it with the knowledge and

concurrence of James Ten Eyck, who was, at the times of some of these acts, a member of consistory and a trustee of the church, and took part, as such, in them. The defendant rebutted this evidence by proof that, for a considerable part of the time, James Ten Eyck had control of the ground, and directed the burials. This, the plaintiffs contended, was done by him as their agent.

The plaintiffs gave in evidence a deed from James Ten Eyck to them, dated September 12, 1829, which included the *locus in quo.* This deed was attested by and acknowledged before Andrew Howell, then a judge of Somerset pleas. But it had a material alteration on its face, made by cancelling a condition in the deed, which alteration was attested by Judge Howell, and the deed certified by him to be reacknowledged, by writing under the original acknowledgment these words, "and also on the 22d August, 1832. A. Howell." The plaintiffs offered proof that these alterations were made at a meeting in the church between a committee of the consistory and James Ten Eyck, at which the committee objected to the emendations, and the cancellation was then made by Judge Howell, in the presence of James Ten Eyck, and upon consultation with him. To contradict this, the defendant offered a letter and a certificate of Judge Howell, dated after the time of the alteration.

The jury rendered a verdict for the defendant, and the plaintiffs obtained a rule to show cause why the verdict should not be set aside, as being against the weight of evidence, and because the court admitted the letter and certificate of Judge Howell, the same being illegal evidence, and upon affidavit of newly discovered evidence, the same being an entry in the diary of Judge Howell, under date of August 23, 1832, containing these words: "James Ten Eyck's deed to Branch congregation, corrected and perfected to the satisfaction of parties, for burying ground, originally private ground."

The rule to show cause was argued before the CHIEF JUSTICE and Justices OGDEN and POTTS, by *Ransom* and *F. T. Frelinghuysen*, in support of the rule, and *H. V Speer*, against it.

To sustain the position, that an alteration in a deed will not avoid the title which had passed under it, *Ransom* and *Frelinghuysen* cited 2 *Hill, Real Prop.* 416, § 54; 9 *Mass.* 307; 1 *Hen. & Mum.* 391, *Whiting* v. *Daniel;* 9 *Pick.* 105, *Holbrook* v. *Tyrell;* 4 *New Hamp.* 191, *Farrar* v. *Farrar;* 5 *Conn.* 262; 33 *Pick.* 231; 22 *Wend.* 388; 1 *Watts* 236; 7 *Wend.* 364, *Jackson* v. *Gould;* 8 *Cowen* 71, *Lewis* v. *Payne.*

*Speer*, against the rule, to show that the certificates of A. Howell, as to the alterations, were legal evidence, cited— 1 *Greenl. Ev.* § 136; 3 *Burr.* 255, *Wright* v. *Littler;* 6 *East* 195, *Aveson* v. *Kinnard;* 1 *Camp.* 207; 4 *B. & Ald.* 53, *Doe* v. *Ridgeway;* 5 *Bing.* 435, *Provis* v. *Reed;* 3 *Esp.* 284; 4 *Esp.* 50; 2 *Hill* 660; 2 *Strob.* 141, *Smith* v. *Clybell;* 2 *Bailey,* 128, *Elwell* v. *Sutton;* 5 *Penn. St. R.* 227; 9 *Barr.* 156; 2 *Hill* 660; 1 *Harring.* 109; 2 *Yerger* 23.

The CHIEF JUSTICE delivered the opinion of the court.

To an action of trespass for breaking the gate of a burying ground, defendant pleaded title in his father, James Ten Eyck, by whose authority the trespass was committed. Upon the trial, the defendant proved that the burying ground was included within the limits of a farm owned and occupied by James Ten Eyck. To rebut this evidence, the plaintiffs offered in evidence a deed from James Ten Eyck to the plaintiffs for the premises in question, dated September 12th, 1829, and recorded September 29th, 1832, in the clerk's office of the county of Sommerset. They also offered evidence to show an adverse possession of the premises by the plaintiffs for more than twenty years. The defendant offered counter evidence upon the question of possession, and insisted that the

deed was invalid, by reason of an erasure apparent upon its face. A verdict was rendered for the defendant. The plaintiffs ask a new trial, because illegal evidence was admitted upon the trial, because the verdict is against law and against evidence, and because of newly discovered evidence.

It was proved, upon the trial, that the lot in question was purchased of James Ten Eyck, for the church, in the year 1829; that the purchase money was paid; that on the 12th September, 1829, Ten Eyck executed a deed of the lot to the church, for the express purpose of a burying ground; that from that day to this it has been used as a burying ground, and for no other purpose; that the consistory of the church, during that period, have had the oversight of it; that over twenty years ago they erected a fence around it, wnich was kept in repair by the church and consistory; that recently they erected a second fence around it, and caused the grave yard to be surveyed into burying lots; that on the 12th March, 1849, the consistory resolved to subscribe $100 toward erecting a wall around the grave yard. They further resolved, that the sexton should take charge of the ground, that a fixed sum should be paid for each funeral, and that the unoccupied ground should be sold. At a subsequent meeting of consistory, on the 24th April, 1829, they further resolved, that a committee should be appointed to take charge of the ground, with power to erect a fence, to survey the ground into burying lots, and to sell the same. During all this period, James Ten Eyck lived in the immediate neighborhood; he was a member of the church and the consistory; he was present at the meetings of the consistory in March and April, 1829; he made no objection to their proceedings; he neither questioned their title nor possession; he was present when the burying ground was surveyed into lots; he subscribed money to aid in building the fences. On the 30th November, 1849, he wrote to the consistory,

proposing, as difficulties existed about keeping up the fence and managing the ground, to take it from the consistory, pay for the survey of it, and sell lots to the congregation himself. He adds: "the deed, too, I consider to have been rendered void by the erasements, which I did not know of until I lately saw the deed."

To meet this proof of possession in the plaintiffs, the defendant offered evidence, that prior to 1829, when the burying ground was placed by the consistory in charge of the sexton, persons desirous of burying in the ground applied to James Ten Eyck to dig the graves, and for permission to bury in the ground. This evidence, if he acted as the sexton or agent of the church, (as was insisted by plaintiffs) did not at all conflict with the proof of possession in the plaintiffs. The defendant's plea admits possession in the plaintiffs at the time of commencing the suit. His conduct affords the clearest recognition of the possession of the plaintiffs for some years previous to that time; there is no evidence of a change of possession from the defendant to the plaintiffs at any time subsequent to the purchase of the property; there is no denial of the purchase of the property by the defendants, and the payment of the purchase money by them in 1829, nor that from the time of the purchase down to the commencement of the suit, a period of more than twenty years, they continued to use the property for the purpose for which it was conveyed to them. The evidence, to say the least, is very persuasive that the plaintiffs entered into possession, under an agreement to purchase, with the consent of the owner; that the purchase money was paid, and that they held adversely for a period of over twenty years. If such be the state of facts, independent of the deed, the plaintiffs had acquired legal title. *Brown* v. *King*, 5 *Metc.* 173; *Angell on Limitations*, 437.

In regard to the documentary title, it is not questioned that the deed, as it was orig'nally drawn without erasure,

was executed by James Ten Eyck to the plaintiffs in the presence of Andrew Howell, as attesting witness, and that it was acknowledged before Andrew Howell, as judge of the Common Pleas of Somerset, on the 15th of September, 1829. The note of the erasure upon the deed purports, also, to be signed by Judge Howell, as attesting witness. Under the certificate of acknowledgment, the words " and also on the 22d August, 1832, A. Howell " are written. The plaintiffs further, in support of their title, proved, by Abraham Quick, that the consistory, by their committee, refused to accept the deed as it was originally drawn; and that thereupon the erasure was made and attested by Judge Howell, in the presence of James Ten Eyck, after consultation with him, and without objection upon his part.

To meet this case upon the part of the defendant, two papers were offered in evidence, purporting to be signed by Judge Howell, the attesting witness to the alterations in the deed. The first is a letter, directed to James Ten Eyck, dated August 24th, 1832, two days after the alteration in the deed purports to have been made, in which he states that he had signed his name as witness to the erasures in the deed at Mr. Quick's request, in order to gratify him, and that the deed is made worthless by the erasures. The other is a certificate dated 19th September, 1832, stating that he had signed his name to certain erasures in the deed; that he was told the consistory had resolved not to receive the deed, unless the erasures were made; that he did not know by whom they were made, and that he had every reason to believe they were made without James Ten Eyck's consent.

Aside from the very remarkable character of these papers, considering the source from which they emanated, it is worthy of notice, in estimating their value, that they were both signed before the deed was left at the clerk's office to be recorded; yet no objection was

ever made to the recording of the deed, no notice was given to the grantees of the illegality of their title. So far as the evidence shows, the papers were never heard of until more than twenty years after they purport to have been given. James Ten Eyck himself, to whom these papers purport to have been given, on the 30th November, 1849, more than twenty years after their date, writes to the consistory that he did not know of the *erasements* until he lately saw the deed. Admitting the genuineness of these papers, and their competency as evidence, it will be observed that the defendant relies alone upon them to destroy the validity of his deed to the plaintiffs.

The plaintiffs had proved the signature of Andrew Howell as attesting witness to the erasure. That fact cannot be gainsaid, for the defendant's own evidence affirms it. Both the letter and the certificate state that Judge Howell had signed as attesting witness. The plaintiffs further proved, by Mr. Quick, that the alteration was made before the delivery of the deed by the attesting witness in the presence of the grantor, and with his assent. The plaintiffs had made out their case fully. Can the mere declaration, verbal or written, of the subscribing witness, in the absence of other proof of fraud, overcome not only the presumption arising from the signature of the subscribing witness, but the express oath of another witness, who testifies to the fact of the alteration in the presence of the attesting witness? Certainly not. The verdict must be set aside, as against the weight of evidence.

2. It is objected that illegal evidence was admitted upon the trial, *viz.* the written statements of Andrew Howell, the subscribing witness to the deed, who was dead, in disparagement of the evidence afforded by his signature. Similar evidence has been repeatedly admitted. In the recent case of *Stobart* v. *Dryden*, 1 *Mees. & Wels.* 615, upon a review of the authorities, the evidence was rejected by the unanimous judgment of the court. The

reasoning and conclusion in this case are adopted by recent elementary writers of the highest character. 1 *Phil. & Am.* 221; 1 *Greenl.* § 126.

The evidence has, however, been more frequently admitted and approved in Westminster hall than appears to have been supposed by the Court of Exchequer in *Stobart* v. *Dryden*, and in this country the practice has been repeatedly assumed and acted upon as law.    *Crouse* v. *Miller*, 10 *Serg. & R.* 155; *Losee* v. *Losee*, 2 *Hill* 609.

It would seem that, from the necessity of the case (and in many cases, says Chief Justice Best, necessity forms the law), and as affording the best substitute for the opportunity of cross-examination, which has been lost by the death of the witness, the evidence ought to be received in support of a charge of fraud or forgery.    But standing alone, unsupported by other evidence, it is entitled to but little weight, and should never be suffered to defeat the title.

3. The affidavits disclose the discovery of new and material evidence since the trial.    Upon this ground, also, the verdict should be set aside, and a new trial granted.

Let the verdict be set aside, and a new trial granted; costs to abide the event of the suit.

CITED *in Meeker* v. *Boylan,* 4 *Dutch.* 295; *Otterson et al.* v. *Hofford et al.* 7 *Vr.* 131.